FILED
2006 Jan-30 AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT AYCOCK, JR.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-04-BE-2763-S** |
| | ] | |
| **BLOUNT COUNTY BOARD OF EDUCATION, et. al.,** | ] | |
| | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

## MEMORANDUM OPINION

## I. INTRODUCTION AND FACTUAL BACKGROUND

This case is currently pending before the court on a motion for summary judgment (doc. # 11) and supporting brief (doc. # 13) filed by defendants Blount County Board of Education, Principal Phillip Cleveland, and Superintendent James E. Carr. The plaintiff filed an objection to the motion for summary judgment (doc. #16). On August 25, 2005, the court held a hearing on the defendants' motion for summary judgment. The court has jurisdiction of this case under 28 U.S.C. §1331 pursuant to its federal question jurisdiction.

Having reviewed the briefs and evidence submitted by both parties and considered the arguments advanced by the parties at the above-referenced motion hearing, the court concludes that the defendants' motion for summary judgment is due to be GRANTED in its entirety. The court specifically finds that Aycock has not presented sufficient evidence to establish a "class of one" equal protection claim because he has not created a genuine issue of material fact about

whether he was treated differently from similarly-situated third-year probationary teachers or about whether the defendants had a rational basis for the allegedly differential treatment.[1]

The facts stated in the light most favorable to the plaintiff are as follows. Aycock was a non-tenured, probationary agricultural science teacher at J. B. Pennington High School until the non-renewal of his teaching contract near the end of the 2003-2004 school year. Had plaintiff's teaching contract been renewed in 2004, he would have become a tenured teacher with a property interest in his employment.

Plaintiff began teaching at Pennington High School during the 2001-2002 school year, and his immediate supervisor was principal Phillip Cleveland. At all times relevant to this lawsuit, Aycock was the only agricultural science teacher at Pennington.

During the Spring of 2004, Cleveland recommended to Superintendent James E. Carr that the plaintiff's teaching contract not be renewed. Prior to making the recommendation for non-renewal, Superintendent Carr and Cleveland discussed Aycock's performance on at least two occasions.

Cleveland and Carr had their first conversation about the plaintiff's job performance in late July or early August of 2003, when Carr became the Superintendent of the Blount County Schools. During their first conversation, Cleveland expressed concern about what he perceived to be the disorganized condition of the aqua-culture facilities and the unkempt and disorganized appearance of the horticulture area. Cleveland was also concerned that the agricultural science facilities were not being used to their fullest potential. During a second conversation with Carr

---

[1]Prior to the filing of the motion for summary judgment, the plaintiff voluntarily dismissed his First Amendment claims. *See* doc. # 10.

in late November or early December of 2003, Cleveland told Carr that Aycock's performance had not improved.

The Blount County Board of Education evaluates its employees using the Professional Education Personnel Evaluation System ("PEPE") in addition to other relevant and available information. PEPE is a state-wide evaluation system. One of the primary goals of the PEPE evaluation is the creation of a uniform system of conducting personnel evaluations.

PEPE evaluations are conducted three times per year[2] and are compiled into a comprehensive score called the PEPE composite competency score. The Blount County Board of Education primarily uses the PEPE score for professional development, but a component of Board policy indicates that the PEPE score is also used as a tool in making employment decisions. For example, teachers employed by the Blount County Board of Education are expected to score a minimum of 18 if non-tenured, and a minimum score of 20 if tenured. The maximum PEPE score is 32.

Aycock's comprehensive PEPE scores for the three years he was employed by the Blount County Board of Education were as follows: (1) in 2002, he received a 21/32; (2) in 2003, he received a 27/32; and (3) in 2004, he received a score of 27/32.

On April 26, 2004, the Blount County Board of Education adopted Carr's recommendation regarding the non-renewal of Aycock's teaching contract. The non-renewal of an untenured teacher's contract requires the recommendation of the Superintendent and the vote of a majority of the members of the Board of Education. The Superintendent recommends non-renewal based on a principal's recommendation. However, the Board typically does not ask for

[2]The evaluation consists of one announced evaluation and two other non-announced ones.

reasons when a Superintendent recommends non-renewal. In this case, the Board did not inquire about the reasons for the non-renewal.

Superintendent Carr's recommendation that the plaintiff's teaching not be renewed was based on Cleveland's assessment of Aycock's performance. Carr describes his standard for non-renewal as follows: ""I recommend to my principals … if you have concerns you feel strongly about, then you need to recommend non-renewal[of the contract of a teacher]." In making a determination about Aycock's non-renewal, Carr did not compare the plaintiff to any other teacher in the system.

Principal Cleveland's decision to recommend the non-renewal of Aycock's contract was allegedly based on the following concerns: (1) the non-use and disorganized nature of the aquaculture and horticulture facilities; (2) blank grade and attendance books; (3) agricultural science courses not being taught to utilize the facilities; (4) failure to turn in lesson plans, grade books, and required exam review guides; (5) failure to attend parent/teacher conferences; (6) placing orders for items without prior approval; (7) not completing mandated county level proficiencies; (8) arbitrary grading (approximately 125 students received a blanket grade of ninety) on the state report, student report cards, and progress reports; and (9) attitude toward students, parents, and other colleagues.[3]

At the Board's June 4, 2004 meeting, several of Aycock's supporters spoke on his

---

[3]Specifically, the defendant alleges that Aycock was disrespectful to Principal Cleveland when being questioned about the identities of students and chaperons for a school-sponsored field trip; and leaving abruptly when Principal Cleveland was chastising students for damaging property on a school-sponsored field trip. The defendant also alleges that the plaintiff has a disrespectful attitude with fellow faculty members as evidenced by his unwillingness to be a part of the team and his reading newspapers during faculty meetings.

behalf. In response to the outpouring of public support, the Board asked Superintendent Carr to review with Principal Cleveland the reasons for non-renewal to make certain "[Cleveland's] decision was what he wanted it to be."

On June 15, 2004, Superintendent Carr met with Principal Cleveland to review the reasons for his recommendation to non-renew Aycock's contract. Superintendent Carr concluded that Cleveland had justifiable reasons for recommending Aycock's termination.

Plaintiff filed suit on September 21, 2004 alleging that the Board's actions violated 42 U.S.C. § 1983 by depriving him of his fourteenth amendment right of equal protection. Aycock seeks compensatory damages from all defendants; punitive damages from the individual defendants; and equitable relief from the defendants, including reinstatement, back pay, front pay, and adjustment of benefits.

## II. STANDARD OF REVIEW AND DISCUSSION

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52. In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the

court concludes that the defendants' motion for summary judgment is due to be GRANTED, for the reasons referenced below.

In their motion for summary judgment, the defendants argue that the Board's decision to non-renew Aycock's contract was legitimate, nondiscriminatory, and based on the plaintiff's deficient teaching performance. As their primary example of deficient performance, the defendants direct the court's attention to the undisputed evidence that Aycock gave approximately 125 students an arbitrary grade of 90 for the second nine weeks of the first semester of the 2003-2004 school year and gave all of these students a grade of 90 for the semester average. When questioned about his conduct, Aycock explained that he did not have an opportunity to compile true averages, and so he just decided to issue blanket grades.[4] According to the defendants, this episode of arbitrary grading violated fundamental notions of academic integrity and, in its own right, is grounds for the non-renewal of his teaching contract.

Although Aycock admits that he is not a member of a protected class and concedes that his equal protection claim is not predicated on the denial of a fundamental constitutional right (i.e., he has no property interest in continued employment during his probationary teaching period), he nevertheless argues that his denial of tenure implicates the equal protection clause of the Fourteenth Amendment.

Plaintiff argues that he can establish a valid "class of one" equal protection claim, and thus, survive the pending motion for summary judgment because the record indicates that he can establish the following elements: (1) intentional conduct, rather than negligence; (2) differential treatment when compared to similarly-situated third-year probationary teachers who were granted

---

[4]Cleveland Dep. 123:7- 125:5; 87:10-13; Aycock Dep. 54:20-64:10.

tenure at the end of the 2004 school year; and (3) no rational basis for the differential treatment.

In short, Aycock argues that the defendants' intentional conduct (i.e., the non-renewal of his teaching contract) was arbitrary based on a comparision of his PEPE scores during his three years of employment and the PEPE scores of approximately six other non-tenured teachers whose teaching contracts were renewed at the end of the 2004 school year.[5] Plaintiff argues that, based on the above-referenced comparison, he should have been granted tenure. Aycock attributes the differential treatment to his and Principal Cleveland's divergent teaching styles.

Generally, a non-tenured teacher like Aycock has no constitutionally protected "property interest in continued employment. " *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sunderman*, 408 U.S. 593 (1972). However, the equal protection clause of the Fourteenth Amendment protects all persons, even non-tenured teachers with no property interest in their employment, against arbitrary treatment by governmental entities like Boards of Education. *Robinson v. Jefferson County Bd. of Educ.*, 485 F.2d 1381 (5th Cir. 1974).

The plaintiff's "class of one" equal protection argument is based primarily on the holding and reasoning of the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562,

---

[5]*See* doc. # 18, Ex. B. Plaintiff directs the courts attention to the following teachers who had the following cumulative PEPE scores during their three-year probationary period (2002, 2003, and 2004) but whose teaching contracts were renewed: (1) Christopher Canady, who received a score of 18/32 during his first year, a score of 26/31 during his second year, and a score of 23/32 during his last year; (2) Douglas Fuller, who received a score of 19/32 during his first year, 23/32 during his second year, and 24/32 during his third year; (3) Tara Holt who received a score of 22/32 during her first year, 29/32 during her second year, and 24/32 during her third year; (4) Gregory Aderholt, who received a score of 22/32 during his first year, 24/32 during his second year, and 25/32 during his last year; (5) Kristen Massey, who received a score of 21/32 during her first year, a 24/32 during her second year, and 25/32 during her third year; and (6) Heath Vines who received a score of 17/32 during his first year, a score of 24/32 during his second year, and a score of 26 during his final probationary year.

564-65 (2000). In that case, the Supreme Court granted certiorari[6] to determine "whether the equal protection clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." *Olech*, 528 U.S. at 564. The plaintiff in *Olech* was a property-owner who sued the Village, alleging that its demand of an additional 18-foot easement to connect her property to the municipal water supply violated the equal protection clause of the Fourteenth Amendment. According to the plaintiff, the Village's request for an additional 18-foot easement was motivated by ill will resulting from her previous filing of a successful lawsuit against the Village; and that the village "acted either with the intent to deprive *Olech* of her rights or in reckless disregard of her rights." *Olech*, 528 U.S. at 565.

In a *per curiam* opinion, the Supreme Court reasoned that its prior cases had recognized successful equal protection claims brought by a "class of one" where the plaintiff alleges "that she has intentionally been treated differently from others similarly-situated and that there is no rational basis for the difference in treatment." *Olec*h, 528 U.S. at 564 (citing *Allegheny Pittsburg Coal Co. v. Comm'n of Webster Cty*., 488 U.S. 336 (1989)).

The Court also held that the differential treatment, "quite apart from the Village's subjective motivation, [was] sufficient to state a claim for relief under traditional equal protection analysis." *Olech*, 528 U.S. at 656. Therefore, *Olech* did not reach the issue of whether ill-will or malice is an element of a "class-of-one" equal protection claim.

Subsequent to the issuance of the *Olech* decision, lower courts have struggled to define

---

[6]The district court granted the defendant's motion to dismiss, reasoning that the plaintiff's claim failed to state a cause of action under the equal protection clause. The Seventh Circuit, relying on the Village's alleged retaliatory animus, reversed, holding that a plaintiff can allege an equal protection violation by asserting that the state action was "wholly unrelated to any legitimate state objective."

the contours of a "class of one" equal protection claim. For example, at least one judge in this district has recognized that, unless carefully limited, the concept of a "class of one" equal protection claim could "effectively provide a federal cause for review of almost every executive and administrative decision made by state actors." *See e.g, Hicks v. Jackson County Comm'n*, 374 F. Supp. 2d 1084, 1094 (N.D. Ala. 2005) (exhaustively analyzing the affect of *Olech*'s holding within the context of the employment discrimination case of a non-probationary public employee and noting the lack of clear, non-contradictory authority delineating the contours of *Olech's* holding in employment discrimination cases); *but see, Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1215 (D.N.M. 2004) (citing Tenth Circuit authority in support of its holding that class-of-one equal protection clause claims apply in the employment context).

The lower courts are also split on the issue of whether ill-will or malice is an element of a "class of one" equal protection claim. More recently in *Campbell v. City of Rainbow City, Alabama*, No. 04-11409, 2006 WL 36980 (11th Cir. January 6, 2006), the Eleventh Circuit noted the split of authority but did not definitively decide whether ill-will or malice is an element of a "class of one" equal protection claim.

Ultimately, however, this court finds it unnecessary to grapple with the legal uncertainties referenced above, because Aycock has failed to establish differential treatment and that the Board had no rational basis for the denial of tenure.

The determination of whether a comparator is similarly-situated is fact-specific, and the goal is to make realistic, accurate comparisons. "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Hicks*, 374 F. Supp. 2d at 1096 (citing *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19

(1st Cir.1989), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61 (1st Cir. 2004)). In this case, Aycock's differential treatment argument is based on a comparison of his composite PEPE score with the composite scores of other third-year teachers who received tenure at the end of the 2003-2004 school year despite having lower composite PEPE scores.

A comparison of teacher performance based on composite PEPE scores has some visceral appeal. However, for several reasons specific to this case, the court finds that a comparison of teacher performance based solely on PEPE scores is not necessarily indicative of differential treatment. First, a teacher's PEPE score is only based on three classroom observations, and consequently, is not a comprehensive assessment of teacher performance. Second, the undisputed testimony is that a PEPE evaluation can be performed by different evaluators and does not necessarily evaluate the specific set of competencies that might be germane to a certain type of teaching position or that directly correlate to decisions about tenure. For example, Aycock's evidentiary submissions establish that none of the teachers[7] to which he compares himself were agricultural science teachers. Third, the plaintiff does not provide the court with any evidence that his comparators engaged in the same type of misconduct that Aycock **admittedly** engaged in, conduct which Cleveland considered in recommending the non-renewal of the plaintiff's teaching contract: specifically, Aycock's giving an arbitrary grade of 90 to 125 students on the state report, student report cards, and progress reports. Given the above-referenced analysis, the court finds as a matter of law that the plaintiff has failed to present the court with evidence of a similarly-situated comparator sufficient to create a genuine issue of

---

[7]*See* the list of teachers listed on page 11 of his brief (doc. # 16).

material fact regarding differential treatment.

The court also concludes that the motion for summary judgment is due to be granted because of the plaintiff's inability to create a jury question on the issue of whether the defendant had a rational basis for the denial of tenure. The court finds that, even assuming that composite PEPE scores are an adequate comparison tool for discerning differential conduct, a reasonable jury could determine that Aycock's admitted misconduct in arbitrarily issuing grades to approximately 125 students is the type of academic dishonesty that would give a Board a rational basis for the denial of tenure.

Based on the foregoing, the court concludes that the motion for summary judgment is due to be GRANTED in its entirety. The court will enter a separate order consistent with this Memorandum Opinion.

DONE and ORDERED this 30th day of January, 2006.

Karon O. Bowdre

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE